# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:09cv361-RJC-DCK

| | |
|---|---|
| DEW ELECTRIC, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MASS ELECTRIC CONSTRUCTION )<br>CO. and ALDRIDGE ELECTRIC, INC. )<br>d/b/a MASS-ALDRIDGE, a Joint )<br>Venture; TRAVELERS CASUALTY )<br>AND SURETY COMPANY OF )<br>AMERICA; & CONTINENTAL )<br>CASUALTY COMPANY, )<br>)<br>Defendants. )<br>_____ ) | ORDER |

**THIS MATTER** is before the Court on the plaintiff's motion for partial summary judgment (Doc. No. 19) and the related briefs in support and opposition (Doc. Nos. 18, 21, & 22). For the reasons stated below, the Court will **DENY** the plaintiff's motion.

## I. BACKGROUND

Defendant Mass-Aldridge, a Joint Venture ("MAJV") and general contractor, entered into two "Prime Contracts" with the City of Charlotte's Charlotte Area Transit System ("CATS") in 2005. Under those contracts, MAJV agreed to construct the Traction Power & Overland Catenary System (Contract 8) and Train Control & Communication (Contract 9) portions of CATS's new South Corridor Light Rail Project. In order to help fulfill its obligations under these two Prime Contracts, MAJV entered into two subcontracts with DEW Electric, Inc. ("DEW") in March and April 2005. Under the subcontracts, DEW agreed to perform a portion of the Prime Contract work.

The Prime Contracts required that the work be completed by March 2, 2007, unless delays resulted in agreements between CATS and MAJV to extend the time of completion. If extensions were granted, CATS and MAJV would negotiate "requests for equitable adjustments" ("REAs"), in which claims for additional compensation by MAJV and its subcontractors would be negotiated and settled. MAJV had authority to settle the claims for additional compensation on behalf of its subcontractors. Section 19(a) of the subcontracts between MAJV and DEW states:

> In the event of any request or claim by Subcontractor seeking additional . . . compensation which arises out of or is related to . . . changes to or defects in the Prime Contract, . . . Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to [the City] . . . . Subcontractor agrees to be bound by any final determination as rendered on its claim, . . . and Subcontractor shall in no event be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from [the City] on account of Subcontractor's claims . . . and Subcontractor agrees that it will accept such amount, if any, received by Contractor from [the City] as full satisfaction and discharge of such claims. Subcontractor agrees that it will not take any other action with respect to any such claims.

(Doc. No. 17-2 at 5). Section 19(c) of the subcontracts states that the "Subcontractor shall be bound by Contractor's determination, made in good faith, as to apportionment of any amounts received by Contractor from [the City] on behalf of Subcontractor and other claimants, including Contractor, whose work is affected by any act or omission of the [City]." (Id. at 6).

Delays occurred during MAJV's and its subcontractors' performance of the work. Consequently, CATS and MAJV negotiated two REAs in 2007. The second, "REA-2," extended the final completion date of the Prime Contracts to November 27, 2007. Under REA-2, CATS and MAJV negotiated separate settlement amounts for Contracts 8 and 9. Under Contract 9, the City paid MAJV a $1,000,000 global settlement of all outstanding claims brought by MAJV and its subcontractors. This settlement was 40% of the $2,460,268 claimed by MAJV and its subcontractors

under Contract 9. Upon receiving the settlement funds, MAJV tendered to DEW $45,000, which was 40% of the REA-2 amount that DEW had claimed under Contract 9. MAJV tendered the $45,000 conditioned on DEW's signing a change order releasing any further claims against MAJV related to such delay. DEW refused to sign the change order releasing further claims against MAJV, and MAJV thus declined to pay the $45,000 for Contract 9. Similarly, under Contract 8, CATS agreed to pay MAJV $236,000 of the $393,351 MAJV and its subcontractors claimed. MAJV admits that CATS specifically agreed to pay $49,332 of DEW's $61,225 claim. MAJV tendered to DEW the $49,332 it had received from the City under REA-2 for Contract 8. MAJV conditioned this payment, too, on DEW's signing a change order releasing any further claims against MAJV related to such delay. DEW refused to sign the change order releasing further claims against MAJV, and MAJV thus also failed to release the $49,332 for Contract 8.

In the second breach of contract allegation in its amended complaint, DEW alleges that MAJV owes it $113,349.24, rather than the $45,000 tendered under REA-2 for Contract 9. DEW's third breach of contract claim alleges that MAJV owes it $61,225, rather than the $49,332 tendered under REA-2 for Contract 8.

MAJV, in supporting its motion for partial summary judgment (Doc. No. 17), has admitted it owes DEW (1) the $45,000 and $49,332 previously tendered; (2) $847.28 under DEW's claim six; (3) $2,209.50 under DEW's claim eight; and (4) $2,705.30 under DEW's claim nine. MAJV has also argued in support of its counterclaim that DEW owes MAJV an overpayment of $3,820.44 regarding DEW's claim seven. All told, MAJV has admitted it is liable to DEW for the total amount of $96,273.64. DEW has moved for partial summary judgment, seeking immediate payment of this

$96,273.64, as well as treble damages and attorneys' fees under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA").

## II. LEGAL STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for

4

the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

DEW seeks partial summary judgment requiring MAJV to pay the $96,273.64 to which it admits liability. In addition, DEW seeks summary judgment on its claim under the UDTPA, along with treble damages and attorneys' fees.

### A. Whether MAJV must immediately pay the amount to which it admits liability

DEW rests its argument on a basic notion: since MAJV has admitted to owing a certain sum, there is no genuine issue of material fact as to MAJV's liability for that sum. DEW argues that MAJV may not condition payment of the money on DEW's signing a release against future claims. MAJV responds that Section 19(a) of the subcontracts specifies DEW must accept the money as "full satisfaction and discharge" of any claims related to that payment, (Doc. No. 17-2 at 5), and that MAJV has the contractual right to require DEW to sign releases before receiving the funds. As the nonmovant at the summary judgment stage, MAJV has the better argument.

DEW fails to persuade the Court that no reasonable jury could find in favor of MAJV on this issue. DEW cites no legal authority for its request. It simply rests on the notion that MAJV has admitted to owing the funds. Awkwardly, however, by asking the Court to grant the present motion, DEW is in a sense asking the Court to trigger Section 19(a) of the subcontract, which would potentially result in the dismissal of DEW's second and third breach of contract claims for underpayment.

DEW initially refused the settlement amounts because it did not wish to sign the change orders releasing MAJV from liability for future claims. But with or without the change orders, in

5

the light most favorable to MAJV, DEW had already agreed pursuant to Section 19(a) that accepting such payment would release MAJV from further liability. In one sense, by failing to sign the change orders releasing MAJV from further liability regarding the payments, DEW has repudiated Section 19(a) of the contract. Viewed in this light, MAJV may be justified in withholding what it owes until DEW performs its end of the bargain. DEW wants it both ways – it wants to accept payment of the settlement amounts without accepting them under Section 19(a) as full satisfaction and discharge of the claims. But a reasonable jury could find that MAJV has the contractual right to require that DEW execute change orders and releases in exchange for the delay payments tendered by CATS.[1] The Court will thus deny DEW's motion seeking immediate payment of the $96,273.64.

**B. DEW's UDTPA claim**

North Carolina General Statutes § 75-1.1 states that unfair or deceptive acts or practices in or affecting commerce are unlawful. "'To prevail on a claim of unfair and deceptive . . . practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." Cullen v. Valley Forge Life Ins., Co., 589 S.E.2d 423, 430 (N.C. Ct. App. 2003) (quoting First Atl. Mgmt. Corp. v. Dunlea Realty Co., 507 S.E.2d 56, 63 (N.C. Ct. App. 1998)). An UDTPA claim is not barred simply because it arises out of a breach of contract claim. Id. "Ordinarily, '[u]nder section 75-1.1, a mere breach of contract does not constitute an unfair or deceptive act'; however, aggravating circumstances, such as deceptive conduct by the breaching party, can trigger the provisions of the Act." Id. (citations omitted). Where the same course of conduct gives rise to a traditionally recognized cause of action,

---

[1] MAJV was required to sign change orders and releases in order to receive the funds from CATS. In the light most favorable to MAJV, a reasonable jury could certainly find that MAJV has the contractual right to require the same of DEW.

6

such as an action for breach of contract, and as well gives rise to a cause of action for violation of N.C. Gen. Stat. § 75-1.1, damages may be recovered either for the breach of contract, or for violation of the UDTPA. Id.

However, in interpreting North Carolina's UDTPA, the Fourth Circuit has recognized that "unfairness inheres in every breach of contract when one of the parties is denied the advantage for which he contracted." United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981). Thus, even an intentional breach of a valid contract does not violate the statute. Id. In this sense, North Carolina law does not allow a party to transpose a claim for simple breach of contract into a claim for unfair and deceptive trade practices absent "substantial aggravating circumstances." See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (citing Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (1992)). A plaintiff's allegations under the UDTPA must be "distinct from" the allegations regarding a breach of contract, and not based on the "existence of an agreement, the terms contained in the agreement, and the interpretation of an agreement." Id.

Here, DEW has failed to demonstrate the absence of a genuine issue of material fact. In the light most favorable to the nonmovant, rather than acting to create a substantially aggravating circumstance, MAJV is simply attempting to enforce Section 19(a) of the subcontract by requiring DEW to sign the change orders. Viewed in this light, DEW's UDTPA claim would not escape a fate as a mere breach of contract claim. DEW has fallen far short of making a showing that would warrant summary judgment on its UDTPA claim.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the plaintiff's motion for partial summary judgment (Doc. No. 19) is **DENIED**.

**SO ORDERED.**

Signed: March 5, 2010

Robert J. Conrad, Jr.
Chief United States District Judge