IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv361-RJC-DCK

| | |
|---|---|
| DEW ELECTRIC, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MASS ELECTRIC CONSTRUCTION ) | |
| CO. and ALDRIDGE ELECTRIC, INC. ) | |
| d/b/a MASS-ALDRIDGE, a Joint ) | ORDER |
| Venture; TRAVELERS CASUALTY ) | |
| AND SURETY COMPANY OF ) | |
| AMERICA; & CONTINENTAL ) | |
| CASUALTY COMPANY, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Mass-Aldridge's ("MAJV") motion for partial summary judgment (Doc. No. 37). The Court, having considered the briefs and the parties' oral arguments at a hearing conducted on July 28, 2010, rules as follows:

## I. BACKGROUND

Defendant MAJV, a joint venture and general contractor, entered into two "Prime Contracts" with the City of Charlotte's Charlotte Area Transit System ("CATS") in 2005. Under those contracts, MAJV agreed to construct the Traction Power & Overland Catenary System (Contract 8) and Train Control & Communication (Contract 9) portions of CATS's new South Corridor Light Rail Project. In order to help fulfill its obligations under these two Prime Contracts, MAJV entered into two subcontracts with DEW Electric, Inc. ("DEW") in March and April 2005. Under the subcontracts, DEW agreed to perform a portion of the Prime Contract work.

The Prime Contracts required that the work be completed by March 2, 2007, unless delays resulted in agreements between CATS and MAJV to extend the time of completion. If extensions were granted, CATS and MAJV would negotiate "requests for equitable adjustments" ("REAs"), in which claims for additional compensation by MAJV and its subcontractors would be negotiated and settled. MAJV had authority to settle the claims for additional compensation on behalf of its subcontractors. Section 19(a) of the subcontracts between MAJV and DEW states:

> In the event of any request or claim by Subcontractor seeking additional . . . compensation which arises out of or is related to . . . changes to or defects in the Prime Contract, . . . Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to [the City] . . . . Subcontractor agrees to be bound by any final determination as rendered on its claim, . . . and Subcontractor shall in no event be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from [the City] on account of Subcontractor's claims . . . and Subcontractor agrees that it will accept such amount, if any, received by Contractor from [the City] as full satisfaction and discharge of such claims. Subcontractor agrees that it will not take any other action with respect to any such claims.

(Doc. No. 17-2 at 5). Section 19(c) of the subcontracts states that the "Subcontractor shall be bound by Contractor's determination, made in good faith, as to apportionment of any amounts received by Contractor from [the City] on behalf of Subcontractor and other claimants, including Contractor, whose work is affected by any act or omission of the [City]." (Id. at 6).

Delays occurred during MAJV's and its subcontractors' performance of the work. Consequently, CATS and MAJV negotiated two REAs in 2007. The first, "REA-1," covered the period from March 2 through August 31, 2007. The second, "REA-2," extended the final completion date of the Prime Contracts to November 27, 2007. Under REA-2, CATS and MAJV negotiated separate settlement amounts for Contracts 8 and 9.[1] Under Contract 9, the City paid

---

[1] Representatives of STV, Inc., the construction management company employed by CATS for the project, negotiated the payments on behalf of CATS.

MAJV a $1,000,000 global settlement of all outstanding claims brought by MAJV and its subcontractors. This settlement was 40% of the $2,460,268 claimed by MAJV and its subcontractors under Contract 9. Upon receiving the settlement funds, MAJV tendered to DEW $45,000, which was 40% of the REA-2 amount that DEW had claimed under Contract 9. MAJV tendered the $45,000 conditioned on DEW's signing a change order releasing any further claims against MAJV related to such delay. DEW refused to sign the change order, and MAJV thus declined to pay the $45,000 for Contract 9. Similarly, under Contract 8, CATS agreed to pay MAJV $236,000 of the $393,351 MAJV and its subcontractors claimed. MAJV admits that CATS specifically agreed to pay $49,332 of DEW's $61,225 claim. MAJV tendered to DEW the $49,332 it had received from the City under REA-2 for Contract 8. MAJV conditioned this payment, too, on DEW's signing a change order releasing any further claims against MAJV related to such delay. DEW refused to sign this change order as well, and MAJV thus also failed to release the $49,332 for Contract 8.

In the second breach of contract allegation in its amended complaint, DEW alleges that MAJV owes it $113,349.24, rather than the $45,000 tendered under REA-2 for Contract 9. DEW's third breach of contract claim alleges that MAJV owes it $61,225, rather than the $49,332 tendered under REA-2 for Contract 8.

MAJV admits it owes DEW (1) the $45,000 and $49,332 previously tendered; (2) $847.28 under DEW's sixth claim for breach; (3) $2,209.50 under DEW's eighth claim for breach; and (4) $2,705.30 under DEW's ninth claim for breach.[2] MAJV has also argued in support of its counterclaim that DEW owes MAJV an overpayment of $3,820.44 regarding DEW's claim seven.

---

[2] MAJV has filed a Rule 68 Offer of Judgment that each of these amounts are owed to DEW.

All told, MAJV has admitted it is liable to DEW for the total amount of $96,273.64. DEW moved for partial summary judgment, seeking immediate payment of this $96,273.64, as well as treble damages and attorneys' fees under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. The Court denied DEW's motion by Order dated March 5, 2010 (Doc. No. 26). By Order dated May 25, 2010, the Court granted MAJV's motion for partial summary judgment as to DEW's claims for fraud, violation of the UDTPA, and punitive damages (Doc. No. 36). MAJV now moves for partial summary judgment as to DEW's first, second, third, and fourth claims for breach of contract.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson

4

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**III. DISCUSSION**

**A. First claim for breach of contract**

DEW alleges in its complaint that it received $156,667.02 from MAJV as payment for DEW's work on REA-1, Contracts 8 and 9 ("REA-1"). DEW alleges this amount is less than what MAJV owes for REA-1, and that MAJV actually owes $214,018.60. However, the record evidence, uncontroverted by DEW, demonstrates that MAJV paid DEW $409,451, for REA-1, a much larger payment than DEW claims it is owed. See (Doc. Nos. 34-2, 34-3). The Court explained this finding in more detail in its previous Order. (Doc. No. 36 at 9).

Rather than providing evidence that MAJV underpaid it for REA-1, DEW merely points to evidence that MAJV submitted an REA-1 claim to CATS on behalf of DEW for $371,039, which is more than the $214,018.60 that DEW had submitted to MAJV. The amount MAJV submitted to CATS on behalf of DEW for reimbursement is irrelevant to DEW's claim, because MAJV fulfilled its REA-1 obligation to DEW under the parties' subcontract. See Bob Timberlake Collection, Inc. v. Edwards, 626 S.E.2d 315, 324 (N.C. Ct. App. 2006) ("[C]ontractual performance . . . claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations."). MAJV overpaid DEW for REA-1. No reasonable jury could find that MAJV

5

breached the subcontract between MAJV and DEW by paying more than the contract required. Nor can DEW show that it was damaged by being overpaid. The Court will grant MAJV's motion as to DEW's first claim for breach of contract.

**B. Second claim for breach of contract**

In its second claim for breach of contract, DEW claims MAJV failed to properly compensate it for its work on REA-2, Contract 9. In response to the current motion, DEW argues that MAJV did not apportion the REA-2, Contract 9, settlement from CATS in good faith.

November 27, 2007, marked the end of the project for MAJV and its subcontractors. It is clear from the prime contract and the subcontracts, and the parties' admissions of their understanding of these agreements, that MAJV and its subcontractors were required to provide ninety days of support service after this date without compensation. However, when submitting its own and its subcontractors' costs to CATS for REA-2, Contract 9, MAJV included costs from the period after November 27, 2007. Thus the total that MAJV submitted to CATS for reimbursement was $1,243,628. This total was comprised of the following claims:

```
MAJV  -    $ 649,279
US&S  -    $ 481,000
DEW   -    $ 113,349
```

CATS, in the course of negotiations, responded to MAJV's submission of its own and its subcontractors' REA-2, Contract 9, costs by proposing a global settlement of all outstanding Contract 9 claims for delays (including non-REA-2 claims). The affidavit of Martin Boyle, the STV representative who negotiated payment of the claims on behalf of CATS, confirms that a global settlement of all outstanding claims was the City's idea rather than MAJV's. (Doc. No. 17-4 at 3).[3]

---

[3] This affidavit is uncontradicted by DEW, and the Court thus accepts it as true for purposes of this motion.

Those additional non-REA-2 claims included $367,000 in claims by US&S and $850,000 in claims by MAJV. There were no additional claims by DEW. Therefore, the total of all claims subject to the global settlement was $2,460,628. CATS offered $1,000,000 as a settlement figure, which was 40% of the total amount claimed, and MAJV accepted the offer. MAJV then paid itself, US&S, and DEW[4] 40% of each party's submitted claims. For DEW, this amount was $45,000.

DEW does not dispute the inclusion of additional Contract 9 claims in the settlement. What DEW contests is MAJV's inclusion of its post-November 27 costs when apportioning the percentage payouts to itself and its subcontractors. DEW contends the inclusion of these costs increased MAJV's portions of the settlement, while it unfairly decreased DEW's portion. The costs DEW identifies as MAJV's improperly relied-upon post-November 27 costs are contained in Exhibit 6 to the affidavit of David E. Smith, at pages 4, 5, and 7. (Doc. No. 42-1 at 10, 11, & 13). A rough sum of these costs is $122,000. In addition, MAJV submitted post-November 27 costs for US&S in the amount of $147,167. However, the record also reveals that DEW claimed roughly $22,000 in costs for REA-2, Contract 9, for the period of December 2007, which MAJV included in its submission to CATS. See (Doc. No. 42-1 at 6). Under DEW's theory, this amount should have also been subtracted from to total and from DEW's $113,349 before the money was apportioned.

Under DEW's preferred method, if MAJV had subtracted the total dollar amount for post-November 27 claims prior to apportioning the settlement, it would have subtracted $122,000 for itself; $147,167 for US&S; and $22,000 for DEW from the original total of $2,460,628. The new total would be $2,169,461. The $1,000,000 global settlement would then represent roughly 46% of the total claims, rather than 40%. With these amounts subtracted out, 46% of MAJV's claim of

---

[4] MAJV tendered the payment and DEW rejected it.

$1,377,279 ($1,499,279 - $122,000) would have been roughly $633,548. 46% of US&S's claim of $700,833 ($848,000 - $147,167) would have been roughly $322,383. Finally, 46% of DEW's claim of $91,349 ($113,349 - $22,000) would have been roughly $42,000.

DEW argues that a true "good faith" allocation of the settlement money would have been for MAJV to have limited its claims and the claims of US&S (and presumably those of DEW) "to only those which pre-dated November 27, 2007." Applying DEW's preferred allocation method, DEW would be entitled to roughly $42,000, which is $3,000 less than the $45,000 MAJV initially tendered.

DEW also asserts that MAJV's negotiating strategy of submitting claims beyond the completion date evidences a lack of good faith because it resulted in a lesser-value settlement. But an unsuccessful negotiating strategy is not, without more, evidence of a lack of good faith. DEW admits that part of the submission was its own costs outside the project completion date. The Court is unconvinced that the submission of greater expenses, including those of the plaintiff, is any evidence of a lack of good faith.[5]

MAJV had significant discretion under the parties' subcontracts to apportion the amount received by CATS for the REA-2, Contract 9, global settlement, as long as such determination was made in good faith. DEW has provided no evidence of a lack of good faith by MAJV, and no reasonable jury could find otherwise. The Court will grant MAJV's motion as to DEW's second claim for breach of contract.

**C. Third claim for breach of contract**

In its third claim for breach of contract, DEW maintains MAJV failed to apportion in good faith the amount it received from CATS as payment for REA-2, Contract 8. DEW's claimed portion

---

[5] Especially where, as here, DEW complains in its next argument that the defendant unfairly submitted its own and US&S's claims for January - March, 2008, without also submitting DEW's untimely claim for the same period. DEW cannot have it both ways.

of MAJV's submission to CATS was $61,226. After receiving payment from CATS for REA-2, Contract 8, MAJV tendered to DEW $49,332 for this submission. DEW argues that the STV representative's negotiation statement "demonstrates that the issues which reduce the claim reasonably appear to be related only to the MAJV portion of the claim." (Doc. No. 41 at 8). It then contends MAJV treated its disallowed claims as valid for purposes of determining the allocation to DEW of the REA-2, Contract 8, payment from CATS. DEW claims this action inflated MAJV's payout while diminishing DEW's payout, evidencing a lack of good-faith apportioning.

DEW fails to point to any specific statement of the STV representative, however, that would show the claim was reduced only because of MAJV's portion of the claim. To the contrary, the STV representative's negotiation summary to which DEW points specifically states, "A discrepancy for DEW Expenses for December 07 is outside the timeframe of Sep-Nov." (Doc. No. 42-1 at 39). A closer look at DEW's submission for REA-2, Contract 8, reveals DEW claimed $11,893.73 for December 2007. It is thus clear that CATS disallowed this $11,893.73 of DEW's claim, subtracting it from DEW's claimed $61,226 to arrive at $49,332. CATS paid this amount to MAJV, and MAJV tendered the same to DEW. As MAJV points out, CATS did not settle the REA-2, Contract 8, claims globally. Rather, it evaluated the claims of MAJV and DEW line by line and allowed or disallowed each item.

MAJV tendered to DEW the same amount that CATS paid MAJV for DEW's submission. This is exactly what MAJV was obligated to do under the parties' subcontracts. Under Section 19(a) of the subcontracts, DEW cannot recover more from MAJV than MAJV recovered from CATS for DEW's cost submissions. Mr. David E. Smith, DEW's general manager and owner, admitted that he understood this provision to mean that "if there was a payment to [MAJV] and it was less than

9

what [MAJV] invoiced, that I could not get any more than that." (Doc. No. 17-6 at 5).[6] MAJV did not breach when it tendered the $49,332, as this is the precise amount it owes DEW for REA-2, Contract 8. There is no genuine issue of material fact as to DEW's third claim for breach of contract, and the Court will grant MAJV's motion as to this claim.

**D. Fourth claim for breach of contract**

DEW alleges in its fourth claim for breach of contract that it is owed money for post-project-end-date costs. It is undisputed in the record that the project completion date, after which MAJV and its subcontractors were to provide ninety days of support work without additional compensation, was November 27, 2007.[7] MAJV submitted post-November 27 costs to CATS for itself and on behalf of US&S, but not on behalf of DEW. DEW contends that because MAJV submitted its own claims and the claims of US&S, "it was incumbent upon MAJV pursuant to the provisions of the contract to present the claims of DEW for the same period." (Doc. No. 41 at 11).

---

[6] Smith's admissions at deposition are quite revealing as to the merits of this claim:

Q. And under your contract with them . . . [MAJV] is not obligated to pay you something that . . . the City said no [to], are they?

A. That is correct.

Q. So that claim is just not valid, is it?

A. Based on the contract and the way it is written, you are correct.

(Doc. No. 17-6 at 16).

[7] DEW argues that because MAJV submitted post-November 27 costs to CATS for itself and on behalf of US&S, that the project end date is uncertain and may have been a later date than November 27, 2007. However, the record shows that November 27, 2007, was the final project completion date after two extensions of time. CATS's representative confirms this fact, as well as that CATS did not agree to any further extensions. See (Doc. No. 17-4 at ¶ 8). MAJV's having submitted costs for the period after November 27 did not alter the end date of the project.

However, DEW has already admitted in this litigation that it is not entitled under the contract to compensation for post-November 27 work.[8]  Smith admits DEW was required to provide unpaid support for ninety days after the project completion date.  Further, he was asked at deposition, "[I]f there was no entitlement on the part of [MAJV] to recover this [$143,000] from the City, they had no obligation to pay $143,000 to you, [did] they?"  Smith responded, "Based on the contract.  But if [MAJV] was paid, then I'm entitled to be paid."  (Doc. No. 17-6 at 17).  As the Court noted in its previous Order, "it's not fair" does not equate to a legal argument in support of a claim for breach of contract.  See (Doc. No. 36 at 11 n.3).  Because DEW is not entitled to compensation for work performed after November 27, 2007, it cannot sustain this claim.  The Court will grant MAJV's motion as to DEW's fourth claim for breach of contract.

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that MAJV's motion for partial summary judgment (Doc. No. 37) is **GRANTED**.  DEW's first, second, third, and fourth claims for breach of contract are hereby **DISMISSED**.

**SO ORDERED.**

Signed: July 28, 2010

Robert J. Conrad, Jr.
Chief United States District Judge

---

[8]  Even if DEW were entitled to compensation for such work under its subcontracts, DEW's own representative admits that DEW did not send notice of such a claim until late March or early April of 2008.  (Doc. No. 17 at 45-46).  The prime contracts, which the subcontracts incorporate, required DEW to provide notice of claims for additional compensation within fifteen days of events giving rise to such claims.  Late March or early April of 2008 is well-beyond this fifteen-day cutoff, even for DEW's latest-dated invoice of March 1, 2008.  Furthermore, Smith admitted at deposition that he did not submit the documents required by the subcontract to support the claim for post-November 27 work.  (Doc.  No.  17-6 at 27).